1  Paul D. O'Haire
   Napa State Hospital
2  2100 Napa-Vallejo Hwy., T-15
   Napa, CA  94558  (707) 252-9988
3
4  Plaintiff, pro se



5

6  ADR

7

8        IN THE UNITED STATES DISTRICT COURT

9      FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                  Civil Division

11

12  PAUL D. O'HAIRE,                    Civil Action  C08  01917  HRL

13                      Plaintiff,      MOTION FOR PRELIMINARY, AND
                                        PERMANENT INJUNCITIVE RELIEF,
14  v.                                  (TRO), TO ADVANCE HEARING,
                                        AND CONSOLIDATE WITH TRIAL
15  NAPA STATE HOSPITAL,                ON THE MERITS, PURSUANT TO
                                        RULE 65(2), FED.R.CIV.P.
16                      Defendant.

17

18        COMES NOW the Plaintiff, pro se, and respectfully moves this Court for issuance of

19  preliminary, and permanent injunctive relief, in form of a temporary restraining order (TRO),

20  to advance hearing, and consolidate with trial on the merits under Rule 65(2), Fed.R.Civ.P.,

21
22  for those reasons, and points and authorities, set forth below:

23                          Notice Requirement

24        Pursuant to Rule 65(a)(1), Fed.R.Civ.P., Defendant NSH, by its Executive Director,

25  was duly placed on Notice, as to Plaintiff's intent to move for injunctive relief, and provided

26  period of thirty-six (36) days in which to conduct, and conclude an investigation, and correct

27  the infirm custodial condition complained of, and has refused to provide administrative relief.

28  See: Attachment 1, appended.

# Table of Contents

Argument                                                                                              Page

1.  Defendant NSH, a component of State Government, is reached for purpose of
    injunctive, and declaratory relief under 42 U.S. C. § 1983, and The American's
    With Disabilities Act (ADA), 42 U.S.C. 42 U.S.C. § 12101, et seq., Titles II,
    and III, and reached for monetary damages under ADA . . . . . . . . . . . . . . . . . .        3

II. Imminent, and continued violation of Plaintiff's rights, and similarly situated
    custodial patients disabled by mental illness, contravening State, and Federal
    Constitutional, and Statutory safeguards, inclusive of ADA . . . . . . . . . . . . . . .      3 - 5

III. The Fact Pattern Supports Likelihood of Success on the Merits . . . . . . . . . . . .        5 - 10

California State, and Federal Case Authority

*Black v. Department of Mental Health* ( 2000 ) 83 Cal.App.4th 739 . . . . . . . . . . . . . .          8

*Board of Trustees of Univ. of Ala. v. Garret*, 531 U.S. 356, 363-364, 121 S.Ct. 995. .          3

*Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 ( 1977 ) . . .          6

*Cornett v. Donovan*, 51 F.3d 894 ( 9th Cir. 1995 ). . . . . . . . . . . . . . . . . . . . . . . .          6

*Daniels v. Williams* 474 U.S. 327, 329 – 336 ( 1986 ). . . . . . . . . . . . . . . . . . . . . .          8

*Hydrick v. Hunter*, 449 F.3d 978 ( 9th Cir. 2006 ) . . . . . . . . . . . . . . . . . . . . . . . . .        3, 9

*Josephs v. Pacific Bell*, 432 F.3d 1006 ( 9th Cir. 2005 ). . . . . . . . . . . . . . . . . . . .        3, 9

*Miranda B. Kitzhaber*, 328 F.3d 1181 ( 9th Cir 2002 ). . . . . . . . . . . . . . . . . . . . .          3

*People v. Parrella* ( 1958 ), 158 Cal.App.2d 140, 147. . . . . . . . . . . . . . . . . . . . .          3

*People v. Wilkenson*  ( 2004 ) 33 Cal.4th 821, 16 CalRptr.3d 420. . . . . . . . . . . . . . .          4

*State of Ariz. v. Maricopa County Medical* ( C.A. 9 ( Ariz ) 1980 ), 643 F.2d 553 . . .      6, 9, 10

*West v. Atkins*, 487 U.S. 42, 48 ( 1988 ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        6, 7

*Youngberg v. Romero*, 457 U.S. 307, 102 S.Ct. 2454, 73 L.Ed.2d 28. . . . . . . . . . . . . .        5, 9

Federal Constitutional, and Statutory Authority
Access Clause, under the First Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      7, 9
Fourth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        9
Fifth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        9
Due Process, and Equal Protection Clauses, under the Fourteenth Amendment. . . . . .      7, 9
42 U.S.C. § 12101 et seq., Title II, and III, and 42 U.S.C. § 1983. . . . . . . . . . . . . .      3, 6, 9, 10

Plaintiff's Attachments
Attachment 1, Notice of Intent, dated February 28, 2008 . . . . . . . . . . . . . . . . . . . . . . . .        1
Attachment 2, Letter Treatment Team, dated September 19, 2007 . . . . . . . . . . . . . . . . .      5, 9
Attachment 3, NSH Administrative Directive #792, effective July 3, 2003 . . . . . . . . . .    4, 6, 9
Attachment 4, NSH Administrative Directive #792, effective July 27, 2006 . . . . . . . . .    4, 6, 9

Argument

I.

Defendant NSH, a State-component, is reached for purpose of injunctive and declaratory relief under The American's With Disabilities Act ( ADA ) 42 U.S.C.§ 12101, et seq., Titles II, and III, and 42 U.S. C. § 1983, and for monetary damages under ADA.

1.  Defendant NSH, a State-component, is foreclosed use of an affirmative defense of Eleventh Amendment immunity for purposes of both injunctive, and declaratory relief under The American's With Disabilities Act ( ADA ), 42 U.S.C. § 12101 et seq., Title II, and III, and 42 U.S.C. § 1983. *Hydrick v. Hunter*, 449 F.3d 978 ( 9th Cir. 2006 ) ( citing *Los Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1472 ( 9th Cir. 1993 ). Defendant NSH, is liable for monetary damages under ADA. In case of *Miranda B. Kitzhaber*, the 9th Circuit held that even States of the United States are barred absolute immunity where their violation of ADA can be linked to their acceptance of any federal funding. 328 F.3d 1181 ( 9th Cir. 2002 ) ( quoting *Douglas v. Cal. Dept. of Youth Authority*, 271 F.3d 812, as amended 271 F.3d 910 ( 9th Cir. 2001 ). Congress intended that ADA, by Statutory design, and continued federal funding be enforced through operation of the Fourteenth Amendment, and provides for "individual suits in equity and other remedy from courts of competent jurisdiction." 42 U.S.C § 12101(b)(4), § 12303; *Board of Trustees of Univ. of Ala. v. Garret*, 531 U.S. 356, 363-364, 121 S.Ct. 995.

Argument

II.

Imminent, and continued violation of Plaintiff's rights, and similarly situated custodial patients disabled by mental illness, contravening State, and Federal Constitutional, and Statutory safeguard.

2.  Plaintiff's Axis 1 Psychiatric Disorder is that of Delusional Disorder, in remission, which qualifies Plaintiff as disabled. In *Josephs v. Pacific Bell*, the 9th Circuit held that ADA regulations recognize that "mental impairments" are included within the term "disability," and indirectly defines this phase to include "[a]ny mental or psychological disorder, such as mental illness." 29 CFR 1630.2(a)(2) & (h)(2) 2005." 432 F.3d 1006 ( 9th Cir. 2005 ).

3.  A given, is that polygraph examination is without evidentiary effect, as originally held in *People v. Parrella* ( 1958 ), 158 Cal.App.2d 140, 147. Some forty-six (46) years later

as in the case of *People v. Wilkenson*, that Court concluded "Lie detector tests do not as yet have enough reliability to justify the admission of expert testimony based on their results. *People v. Adams*, ( 1975 ), 53 Cal.App.3rd 109, 111-119." ( 2004 ). Defendant NSH, both established, and provides Service of polygraph testing under Administrative Directive #792: "Polygraph Examination For Sexual Offenders," effective July 3, 2003, which was prepared at the direction of, and authorized by Reggie Ott, former Program 3 Dir., currently Dir., CPS, and Dave Graziani, former Executive Dir.[1]

4.  A.D. #792 did and continues to have an infirm condition requiring custodial patients irregardless of disability of mental illness,[2] or underlying conviction of sexual offense, waive safeguard of civil process as a pre-requisite to "access" Service of polygraph testing; a core element of discharge criteria. ¶ 7, of the Consent Form recites:

*"I do hereby release, acquit and forever discharge the State of California and its employees, agents, and contractors from any claim arising out of my taking the polygraph examination."* Compare: <u>Attachment 3, and 4</u>, at Consent Form, page 2, appended.

5.  On June 27, 2005, Bradley J. Scholozman, Acting Assistant U.S. Attorney General, Civil Rights Div., United States Dept. of Justice, sent The Honorable Arnold Awarzenegger, Governor of California, Napa State Hospital, and Dave Graziani, former Executive Dir., its Statutorily Required Finding, in a 23-page letter, citing "...significant, and wide-ranging deficiencies in Napa's provision of care to its patients."

6.  On May 2, 2006, the Civil Rights Div., of the United States Dept. of Justice, filed action in U.S. District Court, Central District, which complaint recites, in relevant part:

"The Attorney General files this Complaint on behalf of the United States of America pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997, to enjoin the named Defendants from egregiously and flagrantly depriving individuals housed in...Napa State Hospital...of rights, privileges, or immunities secured and protected by the Constitution and laws of the United States." ( at Page 2, therein. )

---

[1] NSH, Dave Graziani, and Reggie Ott, are currently cited as Defendants in *O'Haire v. Napa State Hospital*, et al., No. C07-00002 (RMW) (PR), which, itself, cites an array of persistent infirm custodial conditions.

[2] Calif. Welfare & Institutions Code § 2972, and Calif. Penal Code § 1026, which is Plaintiff's commitment.

Coupled with filing of a Consent Decree in that matter, which recites, in relevant part:

"Each State Hospital unconditionally permits individuals to exercise their constitutional rights of free speech, including the right to petition the government for redress of grievances without state monitoring and providing them due process." (page 75, therein.)

7.  In December, 2007, Plaintiff's roommate D.S., and G.B., on T-15, were provided Program Service of polygraph testing (the former passing, the later failing), albeit only after several year(s) of Sex Offender Treatment, despite advisement contained in Directive 792, that testing "should be scheduled" after several month(s) of Treatment.[3]  On September 18, 2007, Plaintiff was informed that Program Service of polygraph testing was now required, at which point Plaintiff expressed intent to move for injunctive relief as to infirm request / requirement of ¶ 7, of Consent Form, and told: "Then you'll sit at Napa, until you sign it." The alternative was persuasive and on September 19, 2007, Plaintiff submitted letter agreeing to sign the Consent Form when so requested.  See: Attachment 2, appended.

8. On December 18, 2007, Plaintiff submitted a required Full Disclosure Questionnaire, and along with W.B., on T-15, are awaiting Program Service of polygraph examination; such examination is now on the "check list," of requirement(s) to complete Phase Treatment, in the Sex Offender Treatment Program at Defendant NSH.

Argument

III.

The Fact Pattern clearly supports likelihood of success on the merits.

9.  A given, is that institutional life for those disabled by mental illness and in recovery, whether civil or penal commitment, imposes clear Duty upon State Officials to provide for, and ensure the delivery of essential care, treatment and treatment-related activities or services without undue restraint upon rights secured patients by the State and Federal Constitutions, in that patients retain rights exceeding those of prisoners. *Youngberg v. Romero*, 457 U.S. 307, 102 S.Ct. 2454, 73 L.Ed.2d 28.  Relevant back-drop to the instant civil rights allegation,

---

[3]  "VIII…A. Sexual History Polygraph, 1. Should be scheduled following several months of treatment and only after the client is prepared by reviewing the questionnaire in his/her treatment group." at page 3, of Directive. Compare: Attachments 3, and 4, appended.

1  is that Defendant NSH, is presently under a Consent Decree, underlying a pervasive pattern

2  of civil rights violations in care, and treatment of the disabled which it actively engaged in,

3  despite clearly established law, referred to at ¶¶ 5 and 7, of the Complaint.

4      10.  First-prong of the Federal Standard determinate of injunctive relief is established in

5  case of *State of Ariz. v. Maricopa County Medical*, which requires: "( 1 ) probable success on

6  the merits and possible irreparable injury." *Anderson v. United States*, 612 F.2d 1112." ( C.A.

7  9 ( Ariz ) 1980 ), 643 F.2d 553.  Which standard is effectively the same as that found under

8  California State Law. [4]

9      11.  Defendant NSH, retained James Adams, part time, in conduct of polygraph testing,

10  by Contractual Agreement, terms and conditions of which are presently unknown to Plaintiff,

11  referred to at ¶ 8, [FN2], of the Complaint.  Mr. Adams ( non-party ), or any other contractor

12  retained by Defendant NSH, to provide programs or services to the disabled while in custody,

13  though not State employees, are still effectively State-actors.  *West v. Atkins*, 487 U.S. 42, 48

14  ( 1988 ) ( quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 935, 937. )

15      12.  Defendant NSH, itself, authored best evidence in support of the Plaintiff's move

16  for injunctive relief by erecting, and maintaining operation of Administrative Directive 792,

17  which establishes, in part: ( a ) its State-component status;[5]  ( b ) that such Service to patients

18  in the Sex Offender Treatment Program is:  irrespective of disability of mental illness, civil

19  or penal commitment, or underlying conviction of sexual offense;[6]  ( c ) that Service, in part,

20  is linked to "waiver of access rights" and, in turn, linked to discharge.[7]  Which implicate

21  direct rights issue under *Bounds v. Smith*, 430 U.S. 817 ( 1977 ); *Cornett v. Donovan*, 51 F.3d

22  894 ( 9th Cir. 1995 ); and ADA, Titles II, and III.  See: Attachments 3, and 4, appended.

23

24  _____

[4]  *Sahloibei v. Provident Healthcare, Inc.*, 112 Cal.App.4th 1137, 5 Cal.Rptr.3d 598.

25
[5]  "NAPA STATE HOSPITAL – ADMINISTRATIVE DIRECTIVE"

26
[6]  "REFERRAL & CONSENT TO POLYGRAPH / RELEASE OF INFORMATION....Commitment Type....

27     290 Registrant ▫Yes ▫No...Axis I Diagnosis _____  Axis II Diagnosis _____  Axis III Diagnosis _____ "

28  [7]  Page 1, Consent Form:  "I do hereby release, acquit and forever discharge the State of California and its
    employees, agents, and contractors, from any claim arising out of my taking the polygraph examination."

13. After period of some year(s), NSH negotiated its own on-site Contract for Service of polygraph testing; then, as now patients retain right of refusal to sign the Consent Form, as to infirmity of ¶ 7; refusal, irregardless of stated reason, carries foreseeable consequences: i.e. "Sign, or you'll sit at Napa, until you sign it." <u>Attachment 2</u>, appended. Persuasive alternative to disabled patients seeking referral to community out-patient Treatment; the least restrictive setting from 2003 – 2008.[8]; the same time frame in which patients were provided Advocacy Services of the Office of Patients' Rights, and Dept. of Licensing & Certification.

14. It is Plaintiff's representation that <u>no</u> professionals retained under contract at NSH, ( medical doctors, psychiatrists, psychologists, social workers or Patients' Rights Advocates ) providing essential Services to the disabled, whether civil or penal commitment or convicted sex offender, are favored by State-shield removing their conduct from judicial review, other than contractors for Program Service of polygraph testing.  Since *West*, resolves any doubt that contractors are, in effect, State-actors by acceptance of fees in exchange for State Duty, Defendant NSH, by operation of Directive 792, **set precedent** which unfairly disenfranchises disabled patients from access secured under the Access Clause under the First Amendment, and right under Due Process, and Equal Protection Clauses under the Fourteenth Amendment of the Federal Constitution, and <u>safeguard</u> under Sections 3, and 7(a), of the California State Constitution, should misconduct occur by persons acting under Color of State Authority.

15. In part, an on-going practice of James Adams, in the conduct of polygraph testing is proper advisement to patients that should victims or crimes be disclosed not prior charged that such disclosure must be reported to authorities under California State Law.  However, routine practice of James Adams, is to <u>add</u> subject matter not contained within the proscribed Sexual History Questionnaire, to include, but not necessarily limited to: issues of contraband

---

[8] When Directive 792, became operational July, 2003, and for period of year(s) thereafter disabled patients, were provided 2 options to complete polygraph testing:  Pay $400.00, for on-site Service, or alternatively, indigent patients were afforded the more protracted process of referral to, and subsequent transfer to ASH, remain for period of one ( 1 ) month for testing, and awaiting transport back to Defendant NSH; case in point, of two-tiers of "Service-access," one for those with money or family financial support, and one for the poor.

1    that patients had connection with, which is more reflective of Institutional "need to know,"

2    for possible administrative action and/or referral to authorities for possible legal proceedings,

3    than legitimate scope of inquiry otherwise reasonably related to Treatment-issues of patients

4    in the Sex Offender Treatment Program.  Such Non-treatment related inquiry is engaged in:

5    ( a ) absent advisement to disabled patients that product of their response may, if necessary,

6    be referred for administrative, or legal proceeding, and triggers Fifth Amendment safeguard;

7    ( b ) is not a practice routinely or otherwise employed within the general patient population,

8    but <u>exclusive</u> to Sex Offenders, or those identified as in need of Sex Offender Treatment; and

9    ( c ) effectively implicates a Search Issue, protected under the Fourth Amendment.

10        16.  During period from 2003, up to and including filing of this Complaint, April, 2008,

11    patients are procedurally Self-barred from any fields-of-claim before State or Federal Courts

12    related to, or regarding their Program polygraph testing results which, in whole, or in part,

13    may have resulted in denial of release to community out-patient Treatment, and / or denied

14    patients any opportunity to seek redress for claims of misconduct in course of, or as a result

15    of their polygraph testing.  The infirm "waiver of access," in exchange for Service-access

16    was foreseeable, and intended design of Directive 792, page 2, ¶ 7, of the Consent Form.

17        17.  In case of *Daniels v. Williams*, the United States Supreme Court reiterated need for

18    safeguard of the Fourteenth Amendment, which right survives detention (prison or hospital);

19    "( a ) The Due Process Clause was intended to secure an individual from an abuse of power

20    by government officials." 474 U.S. 327, 329 – 336 ( 1986 ).  The infirm condition, at issue,

21    has, and continues to erode the equity in type-of-access otherwise contemplated under ADA:

22    "no qualified individual with a disability shall, by reason of such disability, be excluded from

23    participation in or be denied the benefits of the services, programs, or activities of a public

24    entity or be subjected to discrimination by any such entity." Title II, § 12181(a), and Title III;

25    *Black v. Department of Mental Health*, 83 Cal.App.4[th] 739.  A persistent inequity against

26    those least capable of protecting their civil rights: patients disabled by mental illness, which

27    invites State-misconduct, capable of unnoticed recurrence, and avoids review; ADA, clearly

28    <u>intended</u> that all manner of State-conduct in programs or services be subject to review.

18. The second-prong under *State of Arizona*, determinate of injunctive relief issues is: "( 2 ) sufficiently serious questions….to create fair ground for litigation….and a balance of hardships tipping decidedly toward the moving party…*Anderson*." which threshold is met by the Fact Pattern of the Complaint, coupled with Attachments appended to the instant Motion, which preliminary showing of State over-reach is ripe for injunctive relief.

19. Plaintiff, albeit a layman, respectfully advances that infirm aspect of Directive 792, makes preliminary, and permanent injunctive relief appropriate remedy by reasons of:

( a ) Defendant NSH, is inarguably a State-component. *Hydrick.*

( b ) Plaintiff, and similarly situated patients qualify as disabled under *Josephs.*

( c ) Plaintiff, and similarly situated patients retain rights exceeding those of prisoners to treatment, and access of those programs and services necessary for recovery. *Youngberg.*

( d ) Defendant NSH, is inarguably recipient of direct and / or indirect federal funding which triggers automatic application of Congressional Mandate under *ADA, Titles II, and III.*

( e ) Defendant NSH, a State-component, has by intent, design, effect, or happenstance erected operation of ¶ 7, of the Consent Form, appended to Directive 792, which effectively, and uniquely extends State-shield against civil rights or other claims for its' State-contractor, providing an essential Program Service to disabled patients linked in part to discharge criteria which produces unique incentive to waive *First, Fourth, Fifth, and Fourteenth Amendment safeguard under the Federal Constitution, and similarly under the Calif. State Constitution.* Attachments 2, 3, and 4, appended.

( f ) Patients, irrespective of civil or penal commitment, or underlying conviction for sexual offense retain, at all times, right of unrestrained access to the courts. *Bounds; Cornett.*

( g ) The only guarantor that State-conduct, that of its employees, agents, or contractors remain within rule-of-law, is to ensure State-actors/conduct remains answerable to courts, despite absent persistent efforts of Defendant NSH ( ¶ 7, of Consent Form, Directive 792 ), to secure from patients all right of review. *First, and Fourteenth Amendments, of the Federal Constitution, and similarly safeguard under the California State Constitution.*

20.  In a nutshell, Defendant NDH, has effectively, and over span-of-year( s ), secured waiver from those least capable of foreseeing, and protecting their Inalienable right of access in exchange for meeting discharge criteria.  What Defendant NSH achieved despite mandate of The American's With Disabilities Act, Title II, III, **was a line crossed in broad daylight;** NSH's persistent denial of the Constitutional, and Statutory rights <u>retained</u> by the disabled, was very basis, in-fact, for necessity of the currently imposed Consent Decree.[9]

21.  Third-prong under *State of Ariz.*, determinate of injunctive relief is Public Interest in claim at-bar.  Plaintiff's position is that Congressional mandate made clear to State, and Federal components, their employees, agents, and contractors that ADA is non-negotiable mandate to protect the disabled from invidious or other pattern of discrimination.

WHEREFORE, the Plaintiff respectfully moves this Court for issuance of preliminary injunctive relief, in form of a temporary restraining order ( TRO) , to advance hearing, and consolidate with trial on the merits, and such other relief as this Court deems just and proper in the interests of justice.

So sworn under penalty of perjury.

Respectfully submitted,

Date: 4-7-08

Paul D. O'Haire
Plaintiff, pro se

---

[9]  It is Plaintiff's representation that on March 3, 2008, Plaintiff filed a Patients' Rights Complaint, by telephone with Susan Kessler, Patients' Rights Advocate, further party in matter of *O'Haire v. Napa State Hospital*, et al., No. C07-0002 ( RMW ) ( PR), in that, in relevant part, the RetrieveLaw computer in the Patients' Library, was out-of-service commencing February 29, 2008.  On March 4, 2008, Plaintiff received a call from Miss Kessler, asking, in part, that Plaintiff submit a written Complaint regarding Law Library access, which the Plaintiff sent on March 4, 2008.  As of filing of the instant Complaint, Miss Kessler, **has declined written Response.**

It is Plaintiff's further representation that the RetrieveLaw computer system was down until March 10, 2008, at which time Plaintiff was informed by Jackie, Reb. Therapist, temporarily in charge of Library for period exceeding 1½ years, that Vendor of the RetrieveLaw system up-dated the hard drive, but that it malfunctioned.  Accordingly another Staff Member, was able to re-install the old hard drive – absent up-dated legal materials, until the at some point in the future the Vendor builds a new system, and installs it.  As of filing of this Action, Plaintiff has been, and remains unable to research more recent case citations in support of instant Motion.

TRO/Advance Hearing/Trial                -10-

MC-270

| ATTORNEY OR PETITIONER WITHOUT ATTORNEY *(Name and Address)*:  TELEPHONE NO: (707) 252-9988 | FOR COURT USE ONLY |
|---|---|

PAUL D. O'HAIRE
NAPA STATE HOSPITAL
2100 NAPA-VALLEJO HWY, # T-15
NAPA, CA 94558
PETITIONER'S BIRTH DATE: 6-25-51

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** NAPA

| IN THE MATTER OF *(NAME)*:    PAUL D. O'HAIRE    Petitioner | CASE NUMBER: H22847 |
|---|---|

**PETITION FOR WRIT OF HABEAS CORPUS—Penal Commitment**

1. Petitioner is being unlawfully restrained of liberty at *(specify name of treatment facility)*:
   by *(specify name of persons having custody, if known)*:

2. Petitioner was admitted to the treatment facility on *(date)*:  1999  and is currently being held pursuant to:
   - [X] Penal Code § 1026 (not guilty by reason of insanity)   [ ] Penal Code § 1026.5(b) (extended commitment)
   - [ ] Penal Code § 1370 (incompetent to stand trial)   [ ] Penal Code § 2684 (prisoners transferred to state hospital)
   - [ ] Penal Code § 2962 (mentally disordered offender)   [ ] Former W & I § 6300 (MDSO)
   - [ ] Other *(specify)*:

3. Check at least one box:
   a. [ ] Petitioner is illegally confined for the following reason:

   b. [X] Petitioner has been denied the following rights without good cause (Penal Code section 2600): Compelled to waive all civil claims against Contractor providing Program Service of polygraph testing in exchange for Service access which, in part, is discharge criteria for the disabled. Such testing is restricted to use with Sex offenders, or those deemed in need of such treatment, and include questions about contraband. ADA, Title II, II, and 1st, 4th, 5th, and 14th Amendment violations. No other Contractor at NSH is so shielded from claim.

4. Petitioner has no adequate and speedy remedy at law. Petitioner has exhausted all administrative remedies absent relief.

5. Have you made any previous requests for relief from this confinement? N/A  *If your answer is yes,* state the nature and grounds for your request, the date it was made, and the result:

6. Petitioner requests that this court *(check all that apply)*:
   a. [ ] Issue a Writ of Habeas Corpus to the director of the facility named in item 1, commanding that the petitioner be brought before this court at a specified time and place.
   b. [ ] Order the facility personnel to release petitioner from said restraint.
   c. [X] Order that all rights to which petitioner is entitled as a patient be observed.
   d. [X] Grant such other relief as this court deems appropriate.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date: 4-7-08

PAUL D. O'HAIRE
*(TYPE OR PRINT NAME)*

▶ Paul D. O'Haire
*(SIGNATURE OF PETITIONER OR PERSON REQUESTING WRIT ON PETITIONER'S BEHALF)*

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
MC-270 [Rev. January 1, 2007]

**PETITION FOR WRIT OF HABEAS CORPUS—Penal Commitment**
**(Mental Health)**

Cal. Rules of Court, rule 4.551
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

Paul D. O'Haire
2100 Napa-Vallejo Hwy., T-15
Napa State Hospital
Napa, CA  94558   (707) 252-9988

Plaintiff, pro se,

# NOTICE

TO: PROSPECTIVE DEFENDANT NAPA STATE HOSPITAL, A COMPOENT OF
STATE GOVERNMENT.

ATTN. ED FOULK, EXEUCTIVE DIRECTOR.

Pursuant to Rule 65(a)(1), Federal Rules of Civil Procedure, prospective defendant is

placed on Notice of Plaintiff's intent to move for preliminary and permanent injunctive relief,

in form of a Temporary Restraining Order, and to advance hearing on the prayed relief, and

consolidate with trial on the merits pursuant to Rule 65(2), Federal Rules of Civil Procedure.

1.  Should the infirm condition complained of not be corrected within thirty (30) days,

action shall be brought pursuant to The American's With Disabilities Act, § 12101 et seq.,

Titles II, and III, and 42 U.S.C. § 1983, through operation of the Fourteenth Amendment,

of the Federal Constitution, with supplemental State Law Claims.  Plaintiff has exhausted

such Administrative Remedies as were available, inclusive of the Office of Patients' Rights,

and the Calif. Dept. of Licensing & Certification, State Facilities Unit, absent relief.

2.  Prospective Defendant, its employees, agents, and contractor maintain, and operate

an infirm practice, policy, or procedure which violates the Plaintiff's civil rights, and that of

similarly situated custodial patients disabled by mental illness.

3.   Administrative Directive #792, "Polygraph Examination For Sexual Offenders,

effective July 3, 2003, was originally prepared at the direction of, and authorized by Reggie

Ott, former Program 3 Dir., and currently Dir., Central Program Services, and Dave Graziani,

former Executive Director. [1]

---

[1] NSH, Dave Graziani, and Reggie Ott, are currently cited as Defendants in *O'Haire v. Napa State Hospital*, et al.,
No. C07-0002 (RMW) (PR), U.S. District Court, San Jose Div., before The Honorable Ronald M. Whyte, Judge,
which, itself, cites an array of persistent infirm custodial conditions

NOTICE, INJUNCTIVE RELIEF / TRO.        -1-                 *Plaintiff's attachment (*

4. The Directive in question did, and apparently continues to have, an infirm condition requiring that custodial forensic patients, irregardless of their disability of mental illness, or underlying conviction of sexual offense, waive safeguard of civil process, as pre-requisite "to access" the Sex Offender Treatment – Program Service - of polygraph examination; a core element in meeting discharge criteria. Paragraph 7, of the Consent Form, states: *"I do hereby release, acquit and forever discharge the State of California and its' employees, agents, and contractors from any claim arising out of my taking the polygraph examination."*

5. On no single prior occasion during period of the Plaintiff's forensic commitment [2] has request been made to waive civil process/access of the courts, as pre-requisite "to access" any medical, surgical, psychological testing or other Program Services provided the disabled.

6. In a nutshell, the linkage of "Waiver of right" as pre-requisite to "Service-access" in matter of an essential Program Service is discriminatory, and State over-reach. The State is certainly free to indemnify its contractor(s) who provide essential Services to its patients, but may not disenfranchise the disabled by infirm-linkage of "waiver" as means "to access" an essential patient Program Service linked to discharge.

7. Plaintiff was being prepared in 2006, for polygraph examination, then advised such was not required in that Plaintiff was not a convicted Sex Offender. On September 18, 2007, Plaintiff was advised that polygraph examination is now mandatory. The Plaintiff submitted written letter to the I.D. Team dated September 19, 2007, agreeing to "waiver of right," when presented with the Consent Form, in that such is a core element in meeting discharge criteria, but maintained running objection.

8. The general population of patients is not required to undergo polygraph testing, despite an ability thereby *to conceal* prior criminal, and or sexual crimes not prior charged which information would reasonably, and necessarily be of import to their Treatment Teams, to better identify Program Treatment needs, *before discharge to the community.*

---

[2]  The Plaintiff 's instant commitment at NSH, is pursuant to California Penal Code § 1026, having been found not guilty by reason of insanity, with a life commitment; Plaintiff has a mental illness of significant dimension.

9.  Plaintiff concedes the practical necessity of polygraph examination at NSH, as factor to ensure Full Disclosure, and in community out-patient treatment as further factor to ensure compliance with the terms and conditions of conditional release.

10. The re-testing of custodial patients within NSH, may occur when new information, or concern arises which, in part, must be confirmed or discounted bearing on the case, and /or individual treatment plan of the patients, thereby constituting an infirm State-action capable of recurrence, yet avoiding review.

ACCORDINGLY, Plaintiff requests that the infirm custodial condition be corrected, and that notice of correction be timely provided him.  Plaintiff shall afford three (3) days for transmittal of this Notice via Institutional Mail, a thirty (30) day period upon its receipt, and period of three (3) days thereafter to receive a response, after which the Plaintiff shall timely move for federal injunctive relief.

Respectfully submitted,

Date: Monday, February 25, 2008

Paul D. O'Haire

### Notice of Probable Related Parties, and Separate Civil Action

In the matter of *O'Haire v. Napa State Hospital*, et al., CA No. C07-0002 (RMW) (PR), copy of the foregoing Notice was timely provided, as follows:

Susan J. King, Deputy Attorney General, currently representing Defendants Graziani, Oncea, Thomas, Weakley, and Licensing, by first class mail.

James T. Anwyl, and Lynn A. Garcia, currently representing Defendants PAI, Inc., and Kessler, Patients' Rights Advocate, by first class mail.

Napa State Hospital, and Reggie Ott, currently un-represented parties, having prior refused informal Waiver of Summons, via Institutional Mail.

Defendants Mohinder Kaur, M.D., and Majid Yasaie, Ph.D., currently un-represented parties, no longer employed by NSH /DMH, and therefore unavailable to service.

U.S. District Court, San Jose Div.

Wednesday, September 19, 2007


Drs. Fisher, Bowyer, and
Alice Sutton, LCSW

Our discussion yesterday afternoon regarding the necessity to focus professional resource in developing more Phase II groups verses the impracticality of starting a Phase III group, for only a handful of us, was somewhat expected.

Granted, we simply do not have the professional resources available to meet the treatment needs of numbers of people who have been waiting some time to even begin Phase II, without a shifting of priorities.

Practical necessities at Napa, underlying years of unaccountability, and now underlying shortages in either budget or trained professional staff in Sex Offender Treatment Issues, has left many of us warehoused, but the term was never used openly.  When Dr. Jones, Chief of Psychology at Napa, attended a Therapeutic Community meeting some time ago I asked him – how do I recover from years of little or no continuity in treatment, and years of no fully functional Sex Offender Treatment Program for an identifiable minority. His response was, at least, honest:  "It's lost time."

I came to Napa, in 1999, and identified as needing Sex Offender Treatment.  Yet in 2007, we still don't have a fully operational Program; the reasons shift, and vary, but in the end it spells warehousing.

Upon being told that my recent Conrep Report requires that I take the polygraph at NSH, I frankly stated that I would file for federal injunctive relief, in that paragraphs 7 requires that I release everyone in DMH, including the Examiner, from civil liability.  I've had rights simply taken away at Napa, but never been asked to sign away a right, as basis for accessing a necessary adjunct to my forensic treatment.

News that my recent Conrep Report "was not that good," was of little surprise.

When told that the process for seeking injunctive relief "would take years," and that such would effectively hold me at Napa, pending a lengthy court process, well – you win.

I'll sign the Consent Form.  Please schedule me for a polygraph examination.


Paul D. O'Haire
T-15, Sex Offender Treatment Program

*Plaintiffs Attachment 2*

# NAPA STATE HOSPITAL

## ADMINISTRATIVE DIRECTIVE

TITLE: POLYGRAPH EXAMINATION FOR SEXUAL
OFFENDERS

NUMBER: 792

APPROVED AT GMM:  June 5, 2003

Page 1 of 4
Attachment

EFFECTIVE DATE: July 3, 2003

SUPERSEDES:  This Administrative Directive is new.

REVISION RESPONSIBILITY:  Regina Ott, Program Director

## POLICY

It is the policy of Napa State Hospital  to ensure the treatment efficacy of polygraph
administration for sexual offenders.   The use of polygraph in the assessment and
treatment of clients shall be limited to sexual history questionnaire,
maintenance/monitoring and specific issue examination. The results of polygraph
examinations will not be used for the determination of guilt or innocence related to any
specific crime or as the sole criterion for release to Community Outpatient Treatment
(COT).

## AUTHORITY

Department of Mental Health Special Order No. 331.

## PROCEDURE

I.      Polygraph examinations shall serve only as an adjunct to therapy in the client's
established treatment plan and should never be considered a substitute or
shortcut in the treatment process.

II.     The client's fitness (based on the biopsychosocial rehabilitation model) and
competency for examination shall be determined through evaluation by the
client's psychiatrist in consultation with the treatment team and a treatment
provider privileged in sex offender treatment.  Competency to consent will be
documented in the Physicians Progress Notes (PPN).

*Plaintiffs attachment 3*

A.   Common exclusionary criteria may include:

1.   Refusal to sign consent and release forms
2.   Extremely overweight
3.   Sleep deprivation
4.   Significant deficits in cognitive processing
5.   Heavily medicated
6.   Actively psychotic
7.   Purposefully attempts to alter the results

III.   Prior to the client signing the Consent to Polygraph Examination and Release of Information, the client's psychiatrist will document in the PPNs that a discussion was held with the client to assure that the client understands the process and purpose of the polygraph examination and agrees to the terms and conditions of this consent.

IV.   After consent is obtained and the client is deemed fit to undergo polygraph examination by the Interdisciplinary Team, the Referral and Consent to Polygraph/Release of Information shall be completed, signed and forwarded to the Program Director for approval.

V.   The Program Director shall forward the Referral and Consent to Polygraph/Release of Information to the Medical Director (or designee) for final approval.

VI.   The approved form is returned to the referring psychiatrist who will then order a formal consultation in the Physicans Ordering System (POS) per hospital policy.

VII.   The consultation and Referral and Consent To Polygraph/Release of Information are sent or faxed to Medical Ancillary Services (MAS) who will then contact the polygrapher and schedule a meeting between the treatment team and the polygrapher.

VIII.   The use of polygraph in the assessment and treatment of patients shall be limited to the following:

A.   Sexual History Polygraph

1.   Should be scheduled following several months of treatment and only after the client is prepared by reviewing the questionnaire in his/her treatment group.

  2.    Examines the client's honesty in providing information about his/her past history of sexual deviance.

      a.    Currently there is no blanket immunity provided to clients who reveal new or previously uninvestigated sex crimes.

      b.    Child and Dependent Adult abuse reporting laws apply.

      c.    All protections should be implemented so that self-incriminating information is not revealed when using the questionnaire

  3.    Assists the treatment team in tailoring effective individualized relapse prevention strategies for the client.

  4.    Ensures that the client has addressed all high-risk elements prior to COT.

B.    Maintenance/Monitoring Polygraph

  1.    Examines a client's compliance with treatment.

  2.    Serves to identify and/or deter the relapse of high-risk behaviors.

  3.    May be administered every four to six months, but may be administered more frequently to client's identified as being high risk for sexual offense.

C.    Specific Issue Polygraph

  1.    Is conducted to clarify conflicting historical data and/or the client's current memory of events.

  2.    Should be considered when conflicting information cannot otherwise be clarified or resolved by the treatment team.

  3.    May assist in clarifying issues that previously resulted in deception on the Maintenance/Monitoring Polygraph.

  4.    May be utilized when the client is being considered for COT and a new issue comes to light.

D.    The report from the polygrapher shall be part of the permanent record.

X.    If the polygraph examination reveals deception or the results are inconclusive:

A.  The treatment team will explore the possible causes of deception.

B.  The treatment team will incorporate this clinical information into the client's treatment plan and retest at a later date.

XI.    Polygraph examinations shall be performed by the American Polygraph Association Accredited Examiners.

A.    Examiners shall have training and expertise in performing polygraph examinations with sex offenders.

B.    The examiner shall provide a comprehensive written examination report within 15 days of the polygraph examination.

C.    The same Polygrapher shall not examine the client more than three times sequentially unless a re-examination is needed to resolve a previously deceptive examination.


DAVE GRAZIANI
Executive Director

Administrative Directive 79
ATTACHMENT
Department of Mental Health

State of California

## REFERRAL & CONSENT TO POLYGRAPH / RELEASE OF INFORMATION

Patient Name_____    Program_____ Unit_____ Date_____

CONREP Program_____ CII #_____ PC 290 Registrant: ❏ Yes ❏ No

County of Commitment_____ Commitment Type_____

"*Release and Consent to Polygraph*" form explained, signed and attached:    ❏ Yes    ❏ No

Check type of Polygraph Requested:  Please list reason(s) for Polygraph below  *(See Reverse Side)*

| | |
|---|---|
| ❏ Sexual History Polygraph | |
| ❏ Maintenance/Monitoring | |
| ❏ Specific Issue Polygraph | |

Is this patient currently in Sex Offender Relapse Prevention Treatment?
❏ Yes    ❏ No    If Yes,  [ ] Individual    [ ] Group

Axis I Diagnosis_____

Axis II Diagnosis_____    Axis III Diagnosis_____

Please list any physical, cognitive or psychological imitations to having a Polygraph:

_____

### List Sex Related Arrests

| Charges | Year | | Charges | Year |
|---|---|---|---|---|
| 1. | | 3. | | |
| 2. | | 4. | | |

Has this patient had a Sex Offense Polygraph in the past?    ❏ Yes    ❏ No    ❏ Unknown

If yes, list the Examiner, Location and Results:

_____

We are in agreement that this polygraph as clinically indicated at this time per AD ?:

_____

| | | | |
|---|---|---|---|
| Treating Psychologist | Date | Treating Psychiatrist | Date |

| | |
|---|---|
| Privileged Sex Offender Treatment Provider | Date |

Program Director: _____
❏ Approves requested polygraph examination                                    Date _____
❏ Does not recommend polygraph examination at this time for the following reasons:  Date _____
  (use additional sheet, if necessary)

| | |
|---|---|
| Medical Director (or Designee) | Date |

REFERRAL & CONSENT TO POLYGRAPH /
RELEASE OF INFORMATION
Retention: Permanent
File:  Legal Section

Confidential Patient Information
See W & I Code Section 5328

ADDRESSOGRAPH

TYPES OF POLYGRAPH FOR SEX OFFENDER TREATMENT

History Polygraph

1. Should be scheduled following several months of treatment and only after the client is prepared by reviewing the questionnaire in his/her treatment group
2. Examines the client's honesty in providing information his/her past history of sexual deviance
3. Assists the treatment team in tailoring effective individualized relapse prevention strategies for the client
4. Ensures that the client has addressed all high-risk elements prior to COT

Maintenance/Monitoring Polygraph

1. Examines a client's compliance with treatment
2. Serves to identify and/or deter the relapse of high-risk behaviors
3. May be administered every four to six months, but may be administered more frequently to clients identified as being high risk for sexual offense

Specific Issue Polygraph

1. Is conducted to clarify conflicting historical data and/or the client's current memory of events
2. Should be considered when conflicting information cannot otherwise be clarified or resolved by the treatment team
3. May assist in clarifying issues that previously resulted in deception on the Maintenance/Monitoring Polygraph
4. May be utilized when the client is being considered for COT and a new issue comes to light

# CONSENT TO POLYGRAPH EXAMINATION AND RELEASE OF INFORMATION

I, _____, understand that by signing this document, I agree to participate in a polygraph examination. I understand the purpose of the polygraph examination is to assist treatment staff to focus on my specific treatment issues, to help the treatment staff give me more thorough and complete treatment, and to assist with continuum of care.

I authorize Napa State Hospital to release any and all confidential information regarding my history of sexual deviancy to _____(polygraph examiner) for the purpose of conducting a polygraph examination.

No one has promised me any reward for taking the examination other than such benefits as may accrue in the treatment process. No one has threatened me to obtain my consent to the polygraph examination.

The polygraph interview and examination will be explained to me before the interview and examination takes place. I understand I may withdraw my consent to take the polygraph examination at any time and I may end the polygraph interview or examination at any time.

I understand that a polygraph examiner, who meets the American Polygraph Association Standards for Post Conviction Sex Offender Examinations, will ask me questions, that the polygraph instrument will record psychophysiological data, that the examiner will interpret the data and will form an opinion as to whether or not I have been truthful when answering all questions. I understand the examiner will submit a written report summarizing his/her opinion and that the report will be made a permanent part of my medical record.

I understand that, if sufficiently specific information is revealed during the polygraph examination, the treatment staff who review the results and report of the polygraph examination may be required by law to report to an appropriate law enforcement agency any known or suspected incidents of child abuse (Section 11166 of the Penal Code) or elder or dependent adult abuse (Section 15630 of the Welfare and Institutions Code). I therefore understand that if I disclose the identity of any previously unreported or unknown victims during a polygraph interview or examination, such disclosure may be the basis of a new investigation. I understand the polygraph examiner may ask me questions about previously unreported or unknown offenses only as to year of offense, the age and sex of the victim and/or state in which the offense occurred but will under no circumstances ask me questions which would specifically identify any previously unreported or unknown victims and thus be the basis of criminal prosecution.

I do hereby release, acquit and forever discharge the State of California and its employees, agents, and contractors, from any claim arising out of my taking the polygraph examination.

I further authorize the examiner to electronically record any or all of the pre-examination interview, examination, or post-examination interview or conversation.

My signature below indicates that I have read this form, or it has been read to me, and that all my questions about the polygraph examination have been answered to my satisfaction.

Signed: _____   Date:_____

Witness: _____   Date:_____



# N A P A   S T A T E   H O S P I T A L

## ADMINISTRATIVE  DIRECTIVE

TITLE:  POLYGRAPH EXAMINATION FOR SEXUAL
       OFFENDERS

NUMBER:  792

APPROVED AT GMM:  July 6, 2006

Page 1 of 4
Attachment

EFFECTIVE DATE:  July 27, 2006

SUPERSEDES:  This Administrative Directive supersedes policy #792 dated
             July 3, 2003.

REVISION RESPONSIBILITY:  Tom Moraida, Program Director _____

---

## POLICY

It is the policy of Napa State Hospital to ensure the treatment efficacy of polygraph administration for sexual offenders.  The use of polygraph in the assessment and treatment of individuals served shall be limited to sexual history questionnaire, maintenance/monitoring and specific issue examination.  The results of polygraph examinations will not be used for the determination of guilt or innocence related to any specific crime or as the sole criterion for release to Community Outpatient Treatment (COT)

## AUTHORITY

Department of Mental Health Special Order No. 331.

## PROCEDURE

I.     Polygraph examinations shall serve only as an adjunct to therapy in the individual's established treatment plan and should never be considered a substitute or shortcut in the treatment process.

II.    The individual's fitness (based on the Recovery Model) and competency for examination shall be determined through evaluation by the individual's psychiatrist in consultation with the treatment team and a treatment provider privileged in sex offender treatment.  Competency to consent will be documented in the Physicians Progress Notes (PPN).

*Plaintiff's Attachment 4*

A.   Common exclusionary criteria may include:

1.   Refusal to sign consent and release forms
2.   Extremely overweight
3.   Sleep deprivation
4.   Significant deficits in cognitive processing
5.   Heavily medicated
6.   Actively psychotic
7.   Purposefully attempts to alter the results

III.   Prior to the individual signing the Consent to Polygraph Examination and Release of Information, the individual's psychiatrist will document in the PPNs that a discussion was held with the individual to assure that the individual understands the process and purpose of the polygraph examination and agrees to the terms and conditions of this consent.

IV.   After consent is obtained and the individual is deemed fit to undergo polygraph examination by the Interdisciplinary Team, the Referral and Consent to Polygraph/Release of Information shall be completed, signed and forwarded to the Program Director for approval.

V.   The Program Director shall forward the Referral and Consent to Polygraph/Release of Information to the Medical Director (or designee) for final approval.

VI.   The approved form is returned to the referring psychiatrist who will then order a formal consultation in the Physicans Ordering System (POS) per hospital policy.

VII.   The consultation and Referral and Consent To Polygraph/Release of Information are sent or faxed to Medical Ancillary Services (MAS) who will then contact the polygrapher and schedule a meeting between the treatment team and the polygrapher.

VIII.   The use of polygraph in the assessment and treatment of individuals served shall be limited to the following:

A.   Sexual History Polygraph

1.   Should be scheduled following several months of treatment and only after the individual is prepared by reviewing the questionnaire in his/her treatment group.
2.   Examines the individual's honesty in providing information about his/her past history of sexual deviance.

    a.    Currently there is no blanket immunity provided to individuals who reveal new or previously uninvestigated sex crimes.

    b.    Child and Dependent Adult abuse reporting laws apply.

    c.    All protections should be implemented so that self-incriminating information is not revealed when using the questionnaire

3.    Assists the treatment team in tailoring effective individualized relapse prevention strategies for the individuals served.

4.    Ensures that the individual has addressed all high-risk elements prior to COT.

B.    Maintenance/Monitoring Polygraph

1.    Examines an individual's compliance with treatment.

2.    Serves to identify and/or deter the relapse of high-risk behaviors.

3.    May be administered every four to six months, but may be administered more frequently to individual's identified as being high risk for sexual offense.

C.    Specific Issue Polygraph

1.    Is conducted to clarify conflicting historical data and/or the individual's current memory of events.

2.    Should be considered when conflicting information cannot otherwise be clarified or resolved by the treatment team.

3.    May assist in clarifying issues that previously resulted in deception on the Maintenance/Monitoring Polygraph.

4.    May be utilized when the individual is being considered for COT and a new issue comes to light.

D.    The report from the polygrapher shall be part of the permanent record.

X.    If the polygraph examination reveals deception or the results are inconclusive:

A.    The treatment team will explore the possible causes of deception.

B.    The treatment team will incorporate this clinical information into the individual's treatment plan and retest at a later date.

XI.    Polygraph examinations shall be performed by the American Polygraph Association Accredited Examiners.

A.    Examiners shall have training and expertise in performing polygraph examinations with sex offenders.

Administrative Directive 792
Page 4

B.    The examiner shall provide a comprehensive written examination report within 15 days of the polygraph examination.

C.    The same Polygrapher shall not examine the individual more than three times sequentially unless a re-examination is needed to resolve a previously deceptive examination.


DAVE GRAZIANI
Executive Director

State of California                                          Department of Mental Health

## REFERRAL & CONSENT TO POLYGRAPH / RELEASE OF INFORMATION

Individual's Name_____    Program_____  Unit_____
Date_____

CONREP Program_____  CII #_____  PC 290 Registrant: ☐ Yes ☐ No

County of Commitment_____  Commitment Type_____

*"Release and Consent to Polygraph"* form explained, signed and attached:    ☐ Yes   ☐ No

Check type of Polygraph Requested:  Please list reason(s) for Polygraph below *(See Reverse Side)*

| | |
|---|---|
| ☐ Sexual History Polygraph | |
| ☐ Maintenance/Monitoring | |
| ☐ Specific Issue Polygraph | |

Is this individual currently in Sex Offender Relapse Prevention Treatment?
☐ Yes   ☐ No   If Yes,   [ ] Individual   [ ] Group

Axis I Diagnosis_____

Axis II Diagnosis_____  Axis III Diagnosis_____

Please list any physical, cognitive or psychological imitations to having a Polygraph:

_____

### List Sex Related Arrests

| | Charges | Year | | Charges | Year |
|---|---|---|---|---|---|
| 1. | | | 3. | | |
| 2. | | | 4. | | |

Has this individual had a Sex Offense Polygraph in the past?    ☐ Yes   ☐ No   ☐ Unknown

If yes, list the Examiner, Location and Results:

_____

We are in agreement that this polygraph as clinically indicated at this time per AD ?:

_____          _____
Treating Psychologist          Date          Treating Psychiatrist          Date

_____
Privileged Sex Offender Treatment Provider          Date

Program Director: _____
☐ Approves requested polygraph examination                          Date _____
☐ Does not recommend polygraph examination at this time for the following reasons: Date _____
   (use additional sheet, if necessary)

_____
Medical Director (or Designee)          Date

State of California                                                    Department of Mental Health

| **REFERRAL & CONSENT TO POLYGRAPH / RELEASE OF INFORMATION** | **ADDRESSOGRAPH** |

**REFERRAL & CONSENT TO POLYGRAPH / RELEASE OF INFORMATION**
Retention: Permanent
File: Legal Section

**Confidential Patient Information**
See W & I Code Section 5328

NSH # _____                              NEW 4/03

### TYPES OF POLYGRAPH FOR SEX OFFENDER TREATMENT

Sexual History Polygraph

1. Should be scheduled following several months of treatment and only after the individual is prepared by reviewing the questionnaire in his/her treatment group.
2. Examines the individual's honesty in providing information his/her past history of sexual deviance.
3. Assists the treatment team in tailoring effective individualized relapse prevention strategies for the individuals served.
4. Ensures that the individual has addressed all high-risk elements prior to COT.

Maintenance/Monitoring Polygraph

1. Examines an individual's compliance with treatment.
2. Serves to identify and/or deter the relapse of high-risk behaviors.
3. May be administered every four to six months, but may be administered more frequently to individuals identified as being high risk for sexual offense.

Specific Issue Polygraph

1. Is conducted to clarify conflicting historical data and/or the individual's current memory of events.
2. Should be considered when conflicting information cannot otherwise be clarified or resolved by the treatment team.
3. May assist in clarifying issues that previously resulted in deception on the Maintenance/Monitoring Polygraph.
4. May be utilized when the individual is being considered for COT and a new issue comes to light.

### CONSENT TO POLYGRAPH EXAMINATION AND RELEASE OF INFORMATION

I, _____, understand that by signing this document, I agree to participate in a polygraph examination. I understand the purpose of the polygraph examination is to assist treatment staff to focus on my specific treatment issues, to help the treatment staff give me more thorough and complete treatment, and to assist with continuum of care.

I authorize Napa State Hospital to release any and all confidential information regarding my history of sexual deviancy to _____(polygraph examiner) for the purpose of conducting a polygraph examination.

No one has promised me any reward for taking the examination other than such benefits as may accrue in the treatment process. No one has threatened me to obtain my consent to the polygraph examination.

The polygraph interview and examination will be explained to me before the interview and examination takes place. I understand I may withdraw my consent to take the polygraph examination at any time and I may end the polygraph interview or examination at any time.

I understand that a polygraph examiner, who meets the American Polygraph Association Standards for Post Conviction Sex Offender Examinations, will ask me questions, that the polygraph instrument will record psychophysiological data, that the examiner will interpret the data and will form an opinion as to whether or not I have been truthful when answering all questions. I understand the examiner will submit a written report summarizing his/her opinion and that the report will be made a permanent part of my medical record.

I understand that, if sufficiently specific information is revealed during the polygraph examination, the treatment staff who review the results and report of the polygraph examination may be required by law to report to an appropriate law enforcement agency any known or suspected incidents of child abuse (Section 11166 of the Penal Code) or elder or dependent adult abuse (Section 15630 of the Welfare and Institutions Code). I therefore understand that if I disclose the identity of any previously unreported or unknown victims during a polygraph interview or examination, such disclosure may be the basis of a new investigation. I understand the polygraph examiner may ask me questions about previously unreported or unknown offenses only as to year of offense, the age and sex of the victim and/or state in which the offense occurred but will under no circumstances ask me questions which would specifically identify any previously unreported or unknown victims and thus be the basis of criminal prosecution.

I do hereby release, acquit and forever discharge the State of California and its employees, agents, and contractors, from any claim arising out of my taking the polygraph examination.

State of California                                                                Department of Mental Health

I further authorize the examiner to electronically record any or all of the pre-examination interview, examination, or post-examination interview or conversation.

My signature below indicates that I have read this form, or it has been read to me, and that all my questions about the polygraph examination have been answered to my satisfaction.


Signed: _____     Date:_____


Witness: _____     Date:_____

MC–270

| ATTORNEY OR PETITIONER WITHOUT ATTORNEY *(Name and Address)*: | TELEPHONE NO.: (707) 252-9988 | FOR COURT USE ONLY |
|---|---|---|

PAUL D. O'HAIRE
NAPA STATE HOSPITAL
2100 NAPA-VALLEJO HWY, #T-15
NAPA, CA 94558

PETITIONER'S BIRTH DATE: 6-25-51

SUPERIOR COURT OF CALIFORNIA, COUNTY OF *NAPA*

IN THE MATTER OF *(NAME)*:

PAUL D. O'HAIRE                    Petitioner

CASE NUMBER:

H22847

**PETITION FOR WRIT OF HABEAS CORPUS—Penal Commitment**

1. Petitioner is being unlawfully restrained of liberty at *(specify name of treatment facility):*
   by *(specify name of persons having custody, if known):*

2. Petitioner was admitted to the treatment facility on *(date):* 1999   and is currently being held pursuant to:
   - [X] Penal Code § 1026 (not guilty by reason of insanity)
   - [ ] Penal Code § 1370 (incompetent to stand trial)
   - [ ] Penal Code § 2962 (mentally disordered offender)
   - [ ] Other *(specify):*
   - [ ] Penal Code § 1026.5(b) (extended commitment)
   - [ ] Penal Code § 2684 (prisoners transferred to state hospital)
   - [ ] Former W & I § 6300 (MDSO)

3. **Check at least one box:**
   a. [ ] Petitioner is illegally confined for the following reason:

   b. [X] Petitioner has been denied the following rights without good cause (Penal Code section 2600): Compelled to waive all civil claims against Contractor providing Program Service of polygraph Testing in exchange for Service access which, in part, is discharge criteria for the disabled. Such testing is restricted to use with Sex offenders, or those deemed in need of such treatment, and includes questions about contraband. ADA, Title II, III, and 1st, 4th, 5th, and 14th Amendt violations. No other Contractor at NSH is so shielded from claim.

4. Petitioner has no adequate and speedy remedy at law. Petitioner has exhausted all administrative Remedies absent relief.

5. Have you made any previous requests for relief from this confinement? N/A   *If your answer is yes,* state the nature and grounds for your request, the date it was made, and the result:

6. Petitioner requests that this court *(check all that apply):*
   a. [ ] Issue a Writ of Habeas Corpus to the director of the facility named in item 1, commanding that the petitioner be brought before this court at a specified time and place.
   b. [ ] Order the facility personnel to release petitioner from said restraint.
   c. [X] Order that all rights to which petitioner is entitled as a patient be observed.
   d. [X] Grant such other relief as this court deems appropriate.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date: 4-7-08

PAUL D. O'HAIRE
(TYPE OR PRINT NAME)

▶ Paul D. O'Haire
(SIGNATURE OF PETITIONER OR PERSON REQUESTING WRIT ON PETITIONER'S BEHALF)

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
MC-270 [Rev. January 1, 2007]

**PETITION FOR WRIT OF HABEAS CORPUS—Penal Commitment**
**(Mental Health)**

Cal. Rules of Court, rule 4.551
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com